**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LYNN MCCORMICK,** | : | **Civil No. 1:25-CV-677** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **FRANK BISIGNANO,** | : | **(Magistrate Judge Carlson)** |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I. Introduction

Lynn McCormick applied for Socal Security benefits based upon a series of emotional impairments, including bipolar disorder; generalized anxiety disorder; panic disorder; depression; and anxiety. No treating or examining source found McCormick's impairments to be disabling and her treatment records frequently described her mood as stable often reporting that she felt well. Based upon a review of her treatment records two state agency experts reached consistent findings regarding her state of mind and concluded that she could perform simple tasks. Presented with this body of evidence, the Administrative Law Judge (ALJ) denied McCormick's claim, and she appealed arguing that the ALJ's decision failed to adequately address what she described as latent, internal inconsistencies in the

medical opinion consensus which found that McCormick was not disabled but could perform simple tasks.

In considering these claims we are enjoined to apply a highly deferential "substantial evidence" standard of review, which is limited by the Supreme Court's mandate that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 587 U.S. 97, 102–03, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). Under this standard of review, we are obliged to affirm the decision of the administrative law judge (ALJ) once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different

conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)).

Here, given McCormick's relatively unremarkable treatment history, the absence of any medical opinion supporting her disability claim, and the consistent state agency opinion consensus that she could perform simple tasks, we find that the ALJ's decision, read as a whole, adequately assessed the plaintiff's emotional impairments, and provided a substantial basis grounded in the evidence for the conclusion that McCormick was not disabled. Therefore, mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 587 U.S. at 102-103, we find that substantial evidence supported the ALJ's decision in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II. Statement of Facts and of the Case

### A. Introduction

This is the plaintiff's second Social Security application. Previously, on March 26, 2021, and ALJ denied McCormick's initial application, (tr. 81-101), a decision which was affirmed by the Social Security Appeals Council on September 9, 2021. (Tr. 102-107).

On January 5, 2023, McCormick filed a Title II application for a period of disability and disability insurance benefits. (Tr. 38). In this second application McCormick alleged an onset of disability beginning March 27, 2021, the day after the denial of her first application. (Id.) According to McCormick she was completely disabled due to an array of emotional impairments including bipolar disorder; generalized anxiety disorder; panic disorder; depression; and anxiety. (Tr. 41). McCormick was born on November 11, 1969, and was 54 years old on her date last insured, which defined her as an individual closely approaching advanced age under the Commissioner's regulations. (Tr. 51). McCormick had a limited education and previously worked as a retail store manager. (Id.)

**B. Clinical History**

With respect to McCormick's emotional impairments, the medical record was largely unremarkable. Between July 2020 and February 2024, McCormick's primary mental health caregiver was Ethos Vally Geropsych LLC. The clinical files of this treatment provider frequently noted that McCormick's mood was stable and that she reported feeling well.[1] These treatment notes also consistently described her thought processes as logical, her memory as intact, and her insight, judgment and impulse

---

[1] See Tr. 334, 339, 348, 351, 355, 370, 478, 480, 497, 501, 606, 610, 614, 619, 622, 635.

control as fair, good or intact. (Tr. 334-370, 478-644). While treatment notes identified several instances in which McCormick reported worsening depression or fleeting suicidal thoughts, these episodes typically arose in the context of familial stress or when there were interruptions in McCormick's medication. (Tr. 344-348, 352-370, 484-49, 627-632). Upon medication adjustment, McCormick often reported improvements in her mood. (Id.) Thus, overall, the records of this treatment provider described emotional impairments which, while real, were well controlled and responded favorably to medication.

The treatment notes of McCormick's primary care physician, Dr. Garry Carbone echoed these fairly benign findings. For example, in July 2022 Dr. Carbone noted that McCormick stated that she was doing really good. (Tr. 449).

### C. The Medical Opinion Evidence

Consistent with McCormick's relatively benign and unremarkable treatment history, no treating or examining medical source opined that she was disabled by her emotional impairments. Instead, the only medical opinions were proffered by two state agency experts, both of whom concluded that McCormick could perform simple tasks.

These two state agency medical opinions were notable in their consistency. At the outset, on February 24, 2023, Dr. Roger Fretz provided an assessment of

McCormick's mental residual functional capacity (RFC). (Tr. 113-118). Dr. Fretz found based upon an examination of McCormick's medical records that she experienced mild impairment understanding, remembering, or applying information and adapting or managing herself. (Tr. 113). Dr. Fretz found that she was moderately impaired in terms of interacting with others and maintaining concentration, persistence, or pace. (Id.) In formulating McCormick's mental RFC, Dr. Fretz concluded that the plaintiff was not significantly limited in multiple spheres of workplace functioning including: The ability to carry out very short and simple instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to make simple work-related decisions; the ability to ask simple questions or request assistance; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. 116-117). Dr. Fretz found that McCormick experienced moderate limitations in terms of the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or in proximity to others without being distracted by them; the ability to complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Id.)

Having made these findings, Dr. Fretz determined that McCormick could perform simple tasks despite her emotional impairments, explaining that:

> The claimant is capable of self-care/hygiene, ADLs. She is participating in limited treatment, no evidence of a thought disorder, no evidence of severe dysfunction in any area. She has difficulty with socialization, is avoidant of others, is not however housebound. No apparent legal issues. She reports some difficulty with concentration, able to follow treatment narrative. No significant issues with memory and adaptation. In remission for alcohol abuse. The statement concerning interpersonal function, stress tolerance, memory and concentration are deemed to be partially consistent with the MER [medical evidence of record]. This is based on comparison of the allegations and the information in the MER that pertains to the intensity, persistence and limited effects of the mental health impairment. No M.S.O./T.S.O. [medical source/treating source opinion] statement The claimant would be capable of performing simple tasks.

(Tr. 117). Dr. Fretz concluded, therefore, that McCormick was not disabled. (Tr. 118).

These findings and conclusions were echoed by a second state agency medical expert, Dr. Karen Weitzner, in August of 2023. (Tr. 119-127). Like Dr. Fretz, Dr. Weitzner opined that McCormick experienced mild impairment understanding,

remembering, or applying information and adapting or managing herself but was moderately impaired in terms of interacting with others and maintaining concentration, persistence, or pace. (Tr. 122). Dr. Weitzner also determined that the plaintiff was not significantly limited in her ability to carry out very short and simple instructions; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; ability to make simple work-related decisions; ability to ask simple questions or request assistance; ability to accept instructions and respond appropriately to criticism from supervisors; and ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. 125-126). Dr. Weitzner also agreed with Dr. Fretz that McCormick experienced moderate limitations in terms of the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or in proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; and the ability to get along

with coworkers or peers without distracting them or exhibiting behavioral extremes. (Id.)

Based upon these findings, Dr. Weitzner also opined that McCormick could perform simple tasks stating that:

> The claimant is capable of self-care/hygiene, ADLs. She is participating in limited treatment, no evidence of a thought disorder, no evidence of severe dysfunction in any area. Most current outpatient progress notes from Valley Geropsych show claimant is stable with medication intervention. 8/23: "Her mood has remained stable. Depression has been well controlled. Her anxiety has also been well-controlled, with the exception of when she is in social settings. She continues to work on social anxiety in therapy. She sleeps well at night. No new medications or concerns were reported." MSE [mental status examination] intact. She has difficulty with socialization, is avoidant of others, is not however housebound. No apparent legal issues. She reports some difficulty with concentration, able to follow treatment narrative. No significant issues with memory and adaptation. In remission for alcohol abuse. The statement concerning interpersonal function, stress tolerance, memory and concentration are deemed to be partially consistent with the MER.[medical evidence of record] This is based on comparison of the allegations and the information in the MER that pertains to the intensity, persistence and limited effects of the mental health impairment. No M.S.O./T.S.O. statement. The claimant would be capable of performing simple tasks.

(Tr. 126).

It was against this medical backdrop that McCormick's case came to be heard by an ALJ.

**D. <u>The ALJ Decision</u>**

A hearing was conducted in this case on March 26, 2024, at which McCormick and a vocational expert testified. (Tr. 58-80). Following this hearing, on May 6, 2024, the ALJ issued a decision in McCormick's case denying this application for benefits. (Tr. 35-57). In that decision, the ALJ first concluded that McCormick last met the insured status requirements of the Social Security Act on December 31, 2023, and did not engage in substantial gainful activity during the period from her alleged onset date of March 27, 2021 through her date last insured of December 31, 2023. (Tr. 40-41). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that McCormick had the following severe impairments: bipolar disorder; generalized anxiety disorder; panic disorder; depression; and anxiety. (Tr. 41). At Step 3, the ALJ determined that McCormick did not have an impairment or combination of impairments that met or medically equaled the severity of one of the disability listing impairments. (Tr. 44-47).

Between Steps 3 and 4, the ALJ then fashioned the following residual functional capacity ("RFC") for the plaintiff which considered all of her emotional impairments:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional

> levels but with the following nonexertional limitations: The claimant must avoid concentrated levels of temperature extremes, humidity, and fumes. She is limited to unskilled work activity as defined in the Dictionary of Occupational Titles (DOT), which is limited to simple routine repetitive tasks, that is low stress defined as only occasional decision making required and only occasional changes in the work setting. She can have no interaction with the public but could have occasional interaction with coworkers and supervisors.

(Tr. 47).

In fashioning this RFC, the ALJ considered the medical evidence, the expert opinions, and the plaintiff's self-described limitations. At the outset, the ALJ summarized McCormick's clinical history in the following terms:

> [D]uring the period at issue, the claimant received outpatient mental health treatment and medication management from Dr. Raja Abbas at Ethos. Longitudinal mental status examinations at times noted deficits in mood, affect, speech, and some suicidal thoughts with no plan, but she consistently had intact memory, full orientation, goal directed and logical thoughts, no delusions, and no auditory or visual hallucinations. When taking her prescribed medication, treatment notes show improvement, and at times the claimant's mental status examinations were entirely within normal limits (Exhibits B7F, B8F, B9F, B10F, B11F, B12F, B14F, B15F, B16F, B17F, B18F, B19F, B20F, B22F, B26F, B27F, B28F, B29F, B30F, and B31F). The evidence supports no greater limitations than have been set forth above.

(Tr. 49).

As for McCormick's activities of daily living, the ALJ observed:

> In terms of claimant's daily activities, the claimant is able to perform a wide array of activities despite her impairments. The claimant reported performing daily activities including caring independently for her

> personal needs, caring for a dog, performing some meal preparation, loading the dishwasher, shopping by computer, counting change, watching television, playing games on her phone, and socializing over the phone and by text (Exhibit B4E). This level of activity suggests that the claimant could perform work on a sustained and continuous basis within the above parameters.

(Id.)

The ALJ also found that the mutually consistent and persuasive medical opinions of the state agency medical experts—the only experts who opined in this case—supported this RFC assessment. As the ALJ noted:

> State agency psychological consultant Roger K. Fretz, Ph.D. completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment on February 14, 2023 (Exhibit B4A, pp. 5, 8-9) and opined the claimant had mild limitations in understanding, remembering, or applying information and adapting or managing oneself; and moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. She was moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. However, she would be capable of performing simple tasks (Id.). On Reconsideration, State agency psychological consultant Karen Evelyn Weitzner, Ph.D. completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment on August 31, 2023 (Exhibit B5A, pp. 4, 7-8) and opined the same limitations as those set forth by Dr. Weitzner at the initial level (Id.). The undersigned finds these opinions persuasive, and they have been adopted herein. They are

> supported by the doctors' own review of the record, including noting well-controlled symptoms with medication and limited treatment (see, e.g. Exhibit B5A, p. 8). Further, they are consistent with the evidence available at the hearing level, including longitudinal mental status examinations at times noted deficits in mood, affect, speech, and some suicidal thoughts with no plan, but she consistently had intact memory, full orientation, goal directed and logical thoughts, no delusions, and no auditory or visual hallucinations. When taking her prescribed medication, treatment notes show improvement, and at times the claimant's mental status examinations were entirely within normal limits (Exhibits B7F, B8F, B9F, B10F, B11F, B12F, B14F, B15F, B16F, B17F, B18F, B19F, B20F, B22F, B26F, B27F, B28F, B29F, B30F, and B31F).

(Tr. 50).

Having made these findings, the ALJ concluded that McCormick could not return to her past relevant work but considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. (Tr. 50-52). Accordingly, the ALJ concluded McCormick had not met the exacting standard of disability set by law and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, McCormick argues that the ALJ erred in failing to reconcile what she perceives as internal inconsistencies in the state agency opinions, and in failing to sufficiently the experts' moderate limitations on her ability to complete a normal work week. However, finding that substantial evidence supported the ALJ's analysis and decision in this case, for the reasons set forth below, we will affirm the decision of the Commissioner.

## III. Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 587 U.S. 97, 102–03, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application

of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D.Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review, "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather, our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based in part upon alleged inadequacies in the articulation of a claimant's mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In Hess the court of appeals considered the question of whether an RFC which limited a claimant to simple tasks adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which

would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . ." Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant

is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)

(quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such

as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the

Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.
>
> An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical

> opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).
>
> Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler

v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

### D. The ALJ's Decision is Supported by Substantial Evidence.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but

more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565.

Guided by these legal precepts, we conclude that substantial evidence supported the ALJ's decision in this case. McCormick's attack on the ALJ's ruling encounters immediate obstacles grounded upon immutable facts. First, fairly construed, while her clinical history documents emotional impairments, those treatment notes simply do not describe conditions which are disabling. Quite the contrary, treatment records frequently noted that McCormick's mood was stable and that she reported feeling well.[2] Moreover, when her emotional state fluctuated, those fluctuations were typically related to situational stressors or interruptions in her treatment regime. Further, every expert who examined McCormick's case opined that she retained the ability to perform simple tasks on a sustained basis. Given this evidence, substantial evidence; that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, supported the ALJ's decision.

[2] See Tr. 334, 339, 348, 351, 355, 370, 478, 480, 497, 501, 606, 610, 614, 619, 622, 635.

Further, McCormick's efforts to impeach this conclusion are ultimately unpersuasive. For example, McCormick invites us to find internal inconsistencies between the check box worksheet forms completed by these state agency experts and their ultimate RFC findings. However, this argument overstates the significance of the worksheets since it is well-settled that the worksheet is designed simply "to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and *does not constitute the RFC assessment.*" Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 636 (3d Cir. 2010) (emphasis in original). Thus, "[n]umerous district courts in this circuit have recognized this point and held that Section I of the form may be assigned little or no weight." Id. (collecting cases).

Rather, what is critical in evaluating medical opinions are the benchmarks of consistency and supportability. Under current Social Security regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' [ ] [and] [a]n ALJ is specifically required to 'explain how [he or she] considered the supportability and consistency factors' for a medical opinion." Andrew G. v. Comm'r of Soc. Sec. at *5 (citing 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2)). But ultimately, provided that the decision is accompanied by an adequate, articulated rationale, examining these factors, it is the province and

the duty of the ALJ to choose which medical opinions have the greatest persuasive power.

That is precisely what the ALJ did in this case. In the absence of any countervailing medical opinion evidence, the ALJ found the state agency consensus that McCormick could perform simple tasks persuasive. In reaching this conclusion the ALJ expressly considered the consistency and supportability of these opinions, finding that these medical opinions were consistent with one another and were supported by the clinical evidence. These consistency and supportability findings, in turn, drew upon substantial evidence in the record. Therefore, the ALJ was entitled to rely upon these medical opinions in making this disability determination. There was no error here.

Further, the ALJ's analysis in this case fully comported with the Court's guidance in Hess which held that a mental RFC is legally sufficient when "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess, 931 F.3d at 214. Thus, while McCormick faults the ALJ for failing to more fully discuss some of her moderate impairments, we find that the opinion read as a whole adequately addressed these

limitations in concluding that the plaintiff retained the ability to perform simple tasks.

Moreover, in considering McCormick's arguments we are mindful that:

> [A]ny evaluation of an administrative agency disability determination must also take into account the fundamental principle that: "'No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.'" Moua v. Colvin, 541 Fed.Appx. 794, 798 (10th Cir. 2013) quoting Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989). Thus, ALJ determinations in Social Security appeals are subject to harmless error analysis, Seaman v. Soc. Sec. Admin., 321 Fed.Appx. 134, 135 (3d Cir. 2009) and "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409, 129 S. Ct. 1696, 1706, 173 L.Ed. 2d 532 (2009).

Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *4 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017). Here, we find that any alleged articulation errors cited by McCormick were harmless given that no clinical or medical opinion evidence supported a claim of total disability in this case.

At bottom, the plaintiff's appeal invites us to re-weigh the evidence. This we may not do. See Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations"); see also Gonzalez v. Astrue, 537 F.Supp.2d 644, 657

(D. Del. 2008) ("In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record") (internal citations omitted)). Rather, our task is simply to determine whether the ALJ's decision is supported by substantial evidence. Finding that this deferential standard of review is met here, we conclude there was no error in the ALJ's decision.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case will affirm the decision of the Commissioner.

## IV. Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

S/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

DATED: October 28, 2026